Honorable Ronald B. Leighton

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

9

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| MONIQUE CHARLENE TILLMAN and ERIC BRANCH, | No. 3:16-cv-05794-RBL |
| Plaintiffs, | MALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JARED WILLIAMS, JOSHUA MCKENZIE, HENRY KNAACK, TACOMA POLICE CHIEF DONALD RAMSDELL, THE CITY OF TACOMA, SIMON PROPERTY GROUP, L.P., UNIVERSAL PROTECTION SERVICE, LP, and JOHN and JANE DOES 1-10, | NOTE ON MOTION CALENDAR: DECEMBER 29, 2017 |
| Defendants | |

19

20

Simon Property Group, L.P., Universal Protection Service, LP, and Henry Knaack ("the

Mall Defendants") move for summary judgment on all claims against them.

21

**FACTUAL BACKGROUND**

22

23

This case arises out of an arrest that occurred at the Tacoma Mall. Simon manages the

property and Universal provides security officers at the mall. Simon pays to have off-duty

24

25

Tacoma police officers provide a police presence at the mall on busy Friday and Saturday

26

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

nights. (Decl. of Geoffrey M. Grindeland, Ex. A, (Simon's Dep. 29:3–17); Ex. B (Officer Williams Dep. 74:17–75:2).) In this context, "off duty" is a term of art that means officers are paid directly by a private entity. In some jurisdictions, a private entity pays the police department instead of the officers, who are then referred to as "extra-duty officers." The only distinction between "off-duty officers" and "extra-duty officers" is how they are paid by the private entity—directly or through the police department.

"Off duty" doesn't mean the officer is acting in a personal capacity rather than an official capacity. In fact, the Tacoma Police Department maintains close control of off-duty officers. Off-duty employment must be approved by the Tacoma Police Department, (Grindeland Decl., Ex. C (TPD Off-Duty Policy P2.1.10), and officers are assigned off-duty shifts by a Tacoma police detective (Williams Dep. 50:2–7, 50:18–51:6). The off-duty officers wear their police uniforms and drive TPD patrol vehicles. (Williams Dep. 58:18–59:6, 61:23–62:2.) The Police Department forbids them from "performance of tasks other than those of a Police nature while in Police uniform." (TPD Off-Duty Policy.)

These off-duty officers aren't supervised or directed by Simon or Universal. (Grindeland Decl., Ex. D (Sadler Dep. 69:10–70:2, 136:10–137:18); Simon's Dep. 19:14–20:12, 31:2–23; Grindeland Decl., Ex. E (Universal's Dep. 118:25–119:3, 123:13–16, 125:15–19); Williams Dep. 68:18–24.) Instead, they remain "responsible to the direction of on-duty TPD Supervisors." (TPD Off-Duty Policy.) They must also "adhere to all rules, regulations, and orders governing conduct . . . while on duty." (*Id*.)

Off-duty officers don't have any role in enforcing mall rules. (Sadler Dep. 75:24–77:14; Simon's Dep. 28:3–17.) Their role is to provide a police presence and enforce the law.

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

(Sadler Dep. 64:19–65:9; Simon's Dep. 28:3–17; Williams Dep. 62:20–63:2, 170:19–171:3.) In fact, they "are expected to effectively and properly handle all violations of the law that they may encounter while working in an off-duty capacity, including any violations that may be committed by the business for which they are employed (i.e., code and/or liquor violations)." (TPD Off-Duty Policy.)

Although paid by Simon during their off-duty shifts at the mall, their "primary duty, obligation, and responsibility . . . is to the Tacoma Police Department." (*Id.*) The officers "are subject to call for duty at any time." (*Id.*) They carry a police radio and check in with Police Dispatch when they start their shift. (Williams Dep. 37:16–22, 80:1–8.) The off-duty officers can be required to leave mall property at any time if dispatched to calls elsewhere in the city. (TPD Off-Duty Policy; Williams Dep. 87:7–23.)

Off-duty officers follow Tacoma Police Department training and policies. (TPD Off-Duty Policy; Sadler Dep. 136:10–137:18; Williams Dep. 62:17–19, 69:18–70:9, 169:3–7.) Neither Simon nor Universal direct the activities of off-duty officers, who instead maintain their complete discretion as police officers while on mall property. (Sadler Dep. 69:10–70:2, 75:7–15; Williams Dep. 62:17–63:2, 68:18–24, 71:13–72:1.)

**The Arrest**

On a Saturday evening in May 2014, Security Officer Knaack, a Universal employee, saw Plaintiffs Monique Tillman and Eric Branch riding their bicycles in the mall parking lot. (Decl. of Henry Knaack ¶ 3.) They were impeding traffic and causing a disturbance by yelling and swearing at drivers who were honking at them to get out of the way. (*Id.*) Among other

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

concerns, Security Officer Knaack was worried the Plaintiffs might be struck by a car as frustrated motorists tried to get around them. (*Id.* ¶ 4.)

Although the Plaintiffs now deny causing a disturbance, it's undisputed that when Security Officer Knaack approached, he initially asked, "What are you guys doing? Where are you going?", or words to that effect. (Knaack Decl. ¶ 4; Grindeland Decl., Ex. F (Tillman Dep. 153:21–154:13); Grindeland Decl., Ex. G (Branch Dep. 184:25–185:11).) When Ms. Tillman responded by yelling and cursing at him, Security Officer Knaack directed the Plaintiffs to leave via the nearest exit, which was immediately to the north. (Knaack Decl. ¶¶ 5–6.) Mr. Branch admits Security Officer Knaack told the Plaintiffs to leave the property. (Branch Dep. 94:17–22, 184:8–185:22.) It's also undisputed that Ms. Tillman responded by yelling "Fuck off!" at Security Officer Knaack before she and Mr. Branch rode away. (Branch Dep. 184:18–24, 185:5–186:1; Tillman Dep. 155:3–8; Knaack Decl. ¶ 7.)

Instead of leaving via the nearby north exit, the Plaintiffs continued riding east through the parking lot. (Branch Dep. 94:17–22, 185:20–186:1; Knaack Decl. ¶ 7.) As Mr. Branch admitted, Security Officer Knaack "had told us to exit but not in the way that we were already exiting." (Branch Dep. 94:17–22.)

Security Officer Knaack used his radio to let Mall Dispatch, other security officers, and off-duty police officers know he was dealing with two teenagers on bikes who were causing a disturbance and refusing to leave the property. (Knaack Decl. ¶ 9.) The Plaintiffs now allege they were planning to leave the property via an east exit, but Security Officer Knaack had no way of knowing that. (*Id.* ¶ 8.) Ms. Tillman had told him to "fuck off" when he directed them to leave and, as far as he knew, they were continuing to ride around the mall parking lot. (*Id.*)

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

It seemed unlikely to him they were leaving the property by riding their bicycles east, because the I-5 freeway was that direction. (*Id.*)

Tacoma Police Officer Jared Williams, who was working as an off-duty officer that night, responded to the radio call. (Williams Dep. 146:4–23.) He was wearing his police uniform and driving a marked police vehicle. (Williams Dep. 21:9–15, 61:23–62:2.) Officer Williams explained that he exercised his discretion "to take enforcement action and trespass [Ms. Tillman]." (Williams Dep. 156:11–14, 156:23–157:6.) As Plaintiffs' own police expert acknowledges, this is a traditional police function. (*See* Grindeland Decl., Ex. H (Van Blaricom Dep. 94:20–95:10); *see also* Williams Dep. 133:17–134:2.)

The Plaintiffs heard Officer Williams' siren and saw his lights, so they stopped. (Branch Dep. 95:8–96:2; Tillman Dep. 157:12–158:12; Dkt. #38-6 (Surveillance Video).) They recognized he was a police officer and understood he was effecting a stop. (Branch Dep. 186:2–187:3; Tillman Dep. 157:20–158:2.) When Officer Williams got out of his vehicle to speak to the Plaintiffs, Ms. Tillman was immediately hostile. (Knaack Decl. ¶ 11.) She yelled, "What the fuck do you want?", (*id.*), and asked if he stopped them because they were black, (Tillman 163:16–164:4). When Officer Williams asked for her name, she said, "Kiss my ass!" and tried to ride away. (Branch Dep. 190:3–23; Tillman Dep. 165:10–22; Knaack Decl. ¶ 12; Williams Dep. 245:19–24.)

Officer Williams grabbed Ms. Tillman by the arm to try to restrain her, but she resisted by trying to pull away. (Williams Dep. 185:22–24; Knaack Decl. ¶ 13.) Ms. Tillman denies resisting, even though her actions were caught on video. She admits, however, that she used her legs "to stop him from trying to slam my face into the concrete." (Tillman Dep. 174:25–

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

175:3.) Officer Williams told her repeatedly throughout this incident to stop resisting. (Knaack Decl. ¶ 13.)

Mr. Branch got off his bike, moved toward Officer Williams, and yelled, "Get the fuck off my sister!" (Knaack Decl. ¶ 14; Williams Dep. 189:4–11.) It appeared Mr. Branch was going to assault Officer Williams. (Knaack Decl. ¶ 14.) Security Officer Knaack was concerned for the safety of Officer Williams, who already had his hands full trying to control Ms. Tillman, so Security Officer Knaack grabbed Mr. Branch by the sweatshirt to hold him back. (*Id.*; Surveillance Video at 1:24–130.)

While holding Ms. Tillman against a car with his right hand, Officer Williams drew his Taser with his left hand, pointed it at Mr. Branch, and told him to back off or he would be "Tased." (Branch Dep. 101:2–8; Knaack Decl. ¶ 14; Williams Dep. 189:12–25.) Mr. Branch complied, stepping back and sitting down, so Officer Williams didn't have to use his Taser. (Branch Dep. 101:2–17; Knaack Decl. ¶ 14; Williams Dep. 189:20–25; Surveillance Video at 1:30–1:45.)

Officer Williams tried to get Ms. Tillman's hands behind her back, but she continued resisting. (Knaack Decl. ¶ 15.) Mr. Branch stood up and tried to move toward Officer Williams again, so Security Officer Knaack pushed Mr. Branch back with a hand to his chest once or twice. (*Id.*) Security Officer Knaack pointed to the ground and Mr. Branch sat back down. (*Id.*; Surveillance Video at 1:45–2:05.)

The reason Security Officer Knaack tried to prevent Mr. Branch from approaching Officer Williams was to protect Officer Williams, but he also realized this was safest for Mr. Branch and Ms. Tillman, too. (Knaack Decl. ¶ 16.) If Mr. Branch had fled the scene instead of

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

approaching Officer Williams, however, Security Officer Knaack wouldn't have tried to stop him. (*Id.*)

Officer Williams was eventually able to get Ms. Tillman on the ground, but she continued to resist being handcuffed. (Williams Dep. 139:16–21, 194:2–12.) Officer Williams warned her to stop resisting or he would use his Taser. (Branch Dep. 103:6–8, 199:16–19; Tillman Dep. 182:11–23; Knaack Decl. ¶ 17.) When Officer Williams perceived that Ms. Tillman was attempting to kick him, he used his Taser on her. (Williams Dep. 139:9–21, 207:19–208:9.) Two other security officers showed up, and one of them handcuffed the Plaintiffs at the direction of Officer Williams. (Knaack Decl. ¶ 17.) Soon after that, additional police officers began arriving. (*Id.*)

Although the Plaintiffs allege they were discriminated against, race played no role whatsoever in Security Officer Knaack's decisions or actions that day. (Knaack Decl. ¶ 18.) The Plaintiffs admitted at their depositions that neither Officer Williams nor Security Officer Knaack said anything to make them think they were treated differently because of their race. (Branch Dep. 116:7–15, 202:1–4; Tillman Dep. 210:6–11.)

The City of Tacoma, its Police Chief, and Officer Williams all have confirmed that Officer Williams was acting in his official capacity as a police officer when he stopped the Plaintiffs and arrested Ms. Tillman. (Dkt. #9, ¶ 2.4 (Tacoma Defendants' Answer); Grindeland Decl., Ex. I (Chief Ramsdell Dep. 174:25–174:13, 177:8–19); Williams Dep. 170:19–171:3.) The Plaintiffs also admit they understood that Officer Williams was a police officer. (Branch Dep. 186:2–10; Tillman Dep. 157:12–158:12.) Plaintiffs' police expert

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

agrees that helping a business owner deal with persons who refuse to leave is part of a police officer's official duties. (*See* Van Blaricom Dep. 94:20–95:10.)

Finally, there's no dispute that Security Officer Knaack was acting in the course and scope of his employment with Universal throughout the incident. (Dkt. #8, ¶¶ 17.1–17.2.)

**Causes of Action**

In addition to claims against the City of Tacoma Defendants, the Plaintiffs allege that Simon and Universal were negligent in their hiring, training, or supervision, (Dkt. #1-1, ¶¶ 15.1–15.3); that Security Officer Knaack committed the torts of battery and false imprisonment when he pushed Mr. Branch, (*id.*, ¶¶ 8.2, 10.1–10.3); that Simon and Universal violated the Washington Law Against Discrimination because their acts were "animated" by Plaintiffs' race, (*id.*, ¶ 16.2); and that Simon and Universal are vicariously liable for Security Officer Knaack's and Officer Williams' conduct, (*id.*, ¶¶ 17.1–17.4). None of these causes of action are supported by the evidence.

**LEGAL AUTHORITY**

The Court should grant summary judgment in favor of Simon, Universal, and Security Officer Knaack, because there are no disputed issues of material fact and all of the Plaintiffs' claims against these three defendants fail as a matter of law.

**A.    Summary-judgment standard**

Summary judgment shall be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FRCP 56(a). The moving party can meet its burden of establishing the absence of a genuine issue of material fact by pointing out that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*,

MALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(No. 3:16-cv-05794-RBL) - 8

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

477 U.S. 317, 325 (1986). The nonmoving party then must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id.* at 324.

Although all facts are considered in the light most favorable to the nonmoving party, the nonmoving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This requires more than a scintilla of evidence, and merely colorable and insignificantly probative evidence is insufficient to defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51 (1986).

As the Supreme Court has explained, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting FRCP 1).

**B.    Officer Williams acted in the course and scope of his employment by the City of Tacoma, so Simon and Universal aren't vicariously liable for his actions.**

There's no evidence to support Plaintiffs' claim that Simon or Universal are vicariously liable for Officer Williams' actions. First, Officer Williams never worked for Universal in any capacity, (Universal's Dep. 123:13–16), so there's no basis for the claim that Universal is vicariously liable for his conduct.

Second, even though Simon paid Officer Williams and other off-duty officers to provide a police presence at the mall, the record shows and the City of Tacoma has acknowledged that Officer Williams was acting in the course and scope of his City employment during the incident. Simon cannot also be vicariously liable for his actions, as "reported decisions impliedly shun a finding of two employers for purposes of vicarious

MALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(No. 3:16-cv-05794-RBL) - 9

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1    liability because both employers do not simultaneously control the negligent worker's task that

2    led to a plaintiff's injuries." *Wilcox v. Basehore*, 189 Wn. App. 63, 82, 356 P.3d 736 (2015).

3         Moreover, Simon never controlled Officer Williams' work, and the mere hiring of an

4    off-duty officer isn't enough to create vicarious liability. The general rule is that a private entity

5    isn't responsible for the acts of a police officer, even when the officer is being paid by the

6    private entity. *Wheatley v. Wash. Jockey Club,* 39 Wn.2d 163, 165, 234 P.2d 878 (1951)

7    (quoting 22 AM. JUR. 385, False Imprisonment § 45 (1939)). "The acts of such a person are,

8    prima facie, those of a public officer, not rendering the private employer liable." *Id*. This is

9    consistent with traditional agency principles, which treat control as the "crucial factor" in

10   distinguishing between an agent and an independent contractor. *See Chapman v. Black*, 49 Wn.

11   App. 94, 99, 741 P.2d 998 (1987); *see also* WPI 50.11.01 (Distinguishing Between Agents and

12   Independent Contractors). A principal generally is liable for the acts of an agent, but not an

13   independent contractor. *DeWater v. State*, 130 Wn.2d 128, 137, 921 P.2d 1059 (1996).

14        Unlike the employer in *Wheatley*, which apparently didn't contest vicarious liability

15   after ordering off-duty officers to arrest a suspect, *see Wheatley,* 39 Wn.2d at 164, neither

16   Simon nor Universal controlled any aspect of Officer Williams' work. They didn't train him,

17   supervise him, or direct his work. (Williams Dep. 62:17–63:2, 68:18–24, 71:13–72:1; Sadler

18   Dep. 69:10–70:2, 75:7–15; Simon's Dep. 19:14–20:12, 31:2–23.) Officer Williams exercised

19   his own discretion "to take enforcement action and trespass [Ms. Tillman]." (Williams Dep.

20   156:11–14, 156:23–157:6.)

21        In contrast to the lack of control by Simon or Universal, the Tacoma Police Department

22   maintains close control of its officers working off-duty shifts. Its Off-Duty Policy provides

MALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(No. 3:16-cv-05794-RBL) - 10

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

that the "primary duty, obligation, and responsibility of an employee is to the Tacoma Police Department." (TPD Off-Duty Policy.) Off-duty employment must be approved by the Police Department, and off-duty officers are "ultimately responsible to the direction of on-duty TPD Supervisors." (*Id.*) Off-duty officers wear their police uniforms, carry TPD-issued equipment, and drive TPD patrol vehicles. (Williams Dep. 58:18–59:6, 61:23–62:2.) They are prohibited from performing "tasks other than those of a Police nature while in Police uniform." (TPD Off-Duty Policy.) They carry a police radio and check in with Police Dispatch when they start their off-duty shift. (Williams Dep. 37:16–22, 80:1–8.) The officers can be required to leave mall property at any time if they are dispatched to calls elsewhere in the city. (TPD Off-Duty Policy; Williams Dep. 87:7–23.) In fact, TPD Policy requires off-duty officers to handle all violations of the law, even those "that may be committed by the business for which they are employed (i.e., code and/or liquor violations)." (TPD Off-Duty Policy.)

The City of Tacoma, its Police Chief, and Officer Williams all agree that Officer Williams was performing his official duties throughout this incident. His actions that day were traditional police functions: responding to a report of trespassing, detaining individuals, and making an arrest. *See Villegas v. Gilroy Garlic Festival Ass'n,* 541 F.3d 950, 957 (9th Cir. 2008) (*en banc*) ("it is generally not a constitutional violation for a public officer to enforce a private entity's rights"); *Mike v. Tharp,* 21 Wn. App. 1, 6, 583 P.2d 654 (1978) (recognizing police officers' function of keeping the peace and authorizing arrests to accomplish that goal). Even Plaintiffs' police expert concedes that officers removing unwanted persons from private businesses are performing their official duties. (*See* Van Blaricom Dep. 94:20–95:10.) The Plaintiffs themselves testified that when Officer Williams pulled up in his patrol vehicle, turned

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

on his lights, and sounded his air horn, there was no doubt in their minds that he was a police officer. (Branch Dep. 186:2–187:3; Tillman Dep. 157:20–22.)

Officer Williams acted in the course and scope of his City employment and performed official duties throughout this incident. Neither Simon nor Universal controlled or directed his work in any manner. For all these reasons, Plaintiffs' claim that Simon or Universal are vicariously liable for Officer Williams' actions fails as a matter of law.

**C.    Plaintiffs' claims for negligent hiring, training, and supervision are improper.**

Under Washington law, an employer can be liable for negligent hiring, training, or supervision only when an employee acts outside the scope of employment. *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479, 271 P.3d 254 (2011). The claim generally arises in situations where the "employee steps aside from the employer's purposes in order to pursue a personal objective of the employee." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). It's based on the employer's "limited duty to control an employee for the protection of a third person." *LaPlant*, 162 Wn. App. at 479 (citing Restatement (Third) of Agency § 7.05 (2006).). When an employee commits a tort within the scope of employment, however, "a different theory of liability—vicarious liability—applies." *Id.* at 479–80. Any claim for negligent hiring, training, or supervision is superfluous and "generally improper" when employees acted within the course and scope of their employment. *Id.* at 480.

That's the situation here. Plaintiffs' claim that Universal negligently hired, trained, and supervised Security Officer Knaack is superfluous and improper because he was acting in the course and scope of his employment by Universal. Similarly, Plaintiffs' claim that Simon

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

negligently hired, trained, and supervised Officer Williams fails, because Officer Williams was acting in the course and scope of his City employment.

Nor does the evidence support the elements of such a claim. To prevail on a negligent hiring, training, and supervision claim, a plaintiff must show that: (1) the employee acted outside the scope of employment; (2) the employee presented a risk of harm to others; (3) the employer knew or should have known that the employee posed a risk to others; and (4) any failure to adequately screen, train, or supervise the employee was the proximate cause of the plaintiff's injuries. *LaPlant*, 162 Wn. App. at 479 n.7.

With respect to the first element, as already discussed, neither Security Officer Knaack nor Officer Williams acted outside the scope of their employment by Universal and the City of Tacoma, respectively. With respect to the second and third elements, there's no evidence that Security Officer Knaack or Officer Williams presented a risk of harm to others, much less that their respective employers knew of any such risk. With respect to the fourth element, there's no evidence and no expert testimony that Security Officer Knaack or Officer Williams were inadequately screened, trained, or supervised, much less that any such failure was a proximate cause of harm to the Plaintiffs. The Plaintiffs don't have evidence to support any of the elements of their claim, and their experts don't have any opinions on this topic.

To the extent the Plaintiffs contend Simon should have trained Officer Williams—even though he was acting in the course and scope of his employment by the City—there was no such duty. On the contrary, it's objectively reasonable to hire off-duty police officers and to rely on their training and certification. *See Dean v. City of Buffalo*, 579 F. Supp. 2d 391, 400 (W.D.N.Y. 2008) (rejecting plaintiffs' "bald assertion that the hotel's failure to provide

MALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(No. 3:16-cv-05794-RBL) - 13

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

specific training to an experienced and trained city police officer concerning how to deal with unruly hotel guests constitutes a triable claim of negligence"); *Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 797 (Tex. 2006) (defendant's "status as a certified peace officer made him fit for this type of work"). Officer Williams was a certified police officer, trained and qualified by both the State of Washington and the City of Tacoma. Thus, even if a negligent training claim could be brought against Simon, it would fail as a matter of law because the evidence doesn't support it.

Plaintiffs' improper and unsupported claims for negligent hiring, training, and supervision should be dismissed on summary judgment.

**D.    Plaintiffs' battery and false-imprisonment claims fail because it was reasonable to push Mr. Branch back when he approached Officer Williams.**

Washington law allowed Security Officer Knaack to push Mr. Branch back when he approached Officer Williams, and Security Officer Knaack didn't detain Ms. Tillman in any way, so Plaintiffs' claims for battery and false imprisonment fail as a matter of law.

Battery is the "intentional infliction of harmful or offensive bodily contact." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014). "'A bodily contact is offensive if it offends a reasonable sense of personal dignity.'" *Id.* (quoting Restatement (Second) of Torts § 19 (1965)). But there's a privilege to use force to protect another when the facts, as they appear to the protector, create a reasonable apprehension of danger, and the protector believes intervention is necessary to protect the other. *State v. Penn* 89 Wn.2d 63, 66, 568 P.2d 797 (1977). In fact, an individual protecting others is permitted to use the same amount of force those being defended could have used to protect themselves. *Id.*; *see also*

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Restatement (Second) of Torts § 76 (1965) (defense of others includes privilege to use reasonable force).

False imprisonment occurs when a person is wrongfully deprived of liberty of movement by physical force or by threat of force. *Moore v. Pay'N Save Corp*., 20 Wn. App. 482, 486, 581 P.2d 159 (1978). But individuals are permitted to confine others in defense of themselves or others. Restatement (Second) of Torts § 67 (1965).

Security Officer Knaack didn't touch or detain Ms. Tillman at all, so there's no basis whatsoever for her false-imprisonment claim against him. To the extent Ms. Tillman contends Security Officer Knaack is liable for using his radio to call for help, that's insufficient, because "liability will not be imposed when the defendant does nothing more than detail his version of the facts to a policeman and ask for his assistance, leaving it to the officer to determine what is the appropriate response." *McCord v. Tielsch*, 14 Wn. App. 564, 566, 544 P.2d 56 (1975). Ms. Tillman's claim must be dismissed.

Mr. Branch's claims also fail, because Security Officer Knaack was privileged to use reasonable force to prevent him from endangering Officer Williams. Fortunately, both times Security Officer Knaack touched Mr. Branch were captured on surveillance video. When Mr. Branch got off his bike, moved toward Officer Williams, and yelled, "Get the fuck off my sister!", it appeared Mr. Branch was going to assault Officer Williams. Security Officer Knaack was concerned for the safety of Officer Williams, who already had his hands full trying to control Ms. Tillman, so Security Officer Knaack grabbed Mr. Branch by the sweatshirt to hold him back. (Surveillance Video at 1:24–1:30.) Officer Williams then drew his Taser, and Mr. Branch backed off, sitting down on the nearby pavement. (*Id*. at 1:30–1:45.) When Mr.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1
2
3
4
5
6
7
8

Branch stood up again, Security Officer Knaack pushed him in the chest to keep him away from Officer Williams. (*Id*. at 1:55–2:05.) Mr. Branch then moved back and sat down again. (*Id.*) Mr. Branch didn't sustain any physical injuries from either contact. (Branch Dep. 15:4–7.) In fact, it's likely that Security Officer Knaack's intervention prevented Mr. Branch from getting himself Tased. The minimal force Security Officer Knaack used to accomplish his lawful objective of protecting Officer Williams was reasonable, so it doesn't constitute battery or false imprisonment.

9
10
11
12
13

Moreover, Mr. Branch was already being detained by Officer Williams, so he didn't have any liberty of movement for Security Officer Knaack to restrict.[1] In fact, Security Officer Knaack would have done nothing to keep Mr. Branch from leaving, as long as he didn't endanger Officer Williams. Security Officer Knaack's only goal was to keep Mr. Branch away from Officer Williams, not to prevent him from leaving the scene.

14
15
16
17
18

Security Officer Knaack's minimal use of force to keep Mr. Branch from endangering Officer Williams was lawful under the circumstances, and Security Officer Knaack didn't restrict Plaintiffs' liberty of movement, so Plaintiffs' battery and false-imprisonment claims fail as a matter of law.

19

**E.     There's no evidence to support Plaintiffs' racial-discrimination claim.**

20
21
22
23

The Plaintiffs lack any evidence to support their claim that Simon's and Universal's conduct was "animated in whole or in part" by Plaintiffs' race in violation of the Washington

24
25
26

---

[1] Officer Williams stopped the Plaintiffs because they were trespassing, so he didn't falsely imprison them either. *See Hanson v. City of Snohomish*, 121 Wn.2d 552, 563, 852 P.2d 295 (1993) (probable cause is a complete defense to false-imprisonment claim against a police officer).

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Law Against Discrimination. To prove a claim of racial discrimination under Washington law, the Plaintiffs must establish: (1) that they are members of a protected class; (2) that the establishment is a place of public accommodation; (3) that the Defendants discriminated against the Plaintiffs by treating them differently from persons outside the class; and (4) that Plaintiffs' protected status was a substantial factor causing discrimination. *Demelash v. Ross Stores, Inc.,* 105 Wn. App. 508, 525, 20 P.3d 447 (2001); *McKinney v. City of Tukwila,* 103 Wn. App. 391, 410–11, 13 P.3d 631 (2000).

The Plaintiffs can't establish the third and fourth elements of their claim. There isn't any evidence they were treated differently than anyone else who engaged in similar conduct, let alone that they were treated differently on account of race. While the Plaintiffs dispute they were impeding traffic and swearing at drivers, they admit that when Security Officer Knaack initially contacted them, he merely asked them what they were doing and where they were going. Ms. Tillman responded by yelling and cursing at him, which constituted another violation of the mall's code of conduct, so they were told to leave the property. Instead of leaving as directed, she told him to "Fuck off!" as they rode away. It was Plaintiffs' conduct, not their race, that led Security Officer Knaack and Officer Williams to act.

During Plaintiffs' depositions, they were asked whether there was anything that made them think Security Officer Knaack was motivated by race. Ms. Tillman said, "Just his tone when he first came up to me was accusatory, like I had done something wrong or I must have done something wrong or I was going to do something wrong. But other than that, no." (Tillman Dep. 210:6–11.) To the same question, Mr. Branch said, "No, but we're two black kids riding bikes through the mall and we have two white officers stop us, so what else is there

MALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(No. 3:16-cv-05794-RBL) - 17

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

to think?" (Branch Dep. 116:7–15.) Security Officer Knaack's alleged "tone" and the mere fact the Plaintiffs are black aren't sufficient to support a racial-discrimination claim against anyone, much less Simon or Universal, so this claim, too, must be dismissed.

## CONCLUSION

Because the Plaintiffs don't have sufficient evidence to support any of their claims against Simon, Universal, or Security Officer Knaack, the Mall Defendants' Motion for Summary Judgment should be granted, and all claims against them should be dismissed.

DATED: December 7, 2017

MILLS MEYERS SWARTLING P.S.
Attorneys for Universal Protection Service, LP;
Simon Property Group, L.P.; and Henry Knaack

By:    *s/Geoffrey M. Grindeland*
Geoffrey M. Grindeland, WSBA No. 35798
Brett T. MacIntyre, WSBA No. 46572
Mills Meyers Swartling P.S.
1000 2nd Avenue, 30th Floor
Seattle, WA 98104
Telephone: (206) 382-1000
Fax: (206) 386-7343
E-mail: ggrindeland@millsmeyers.com
          bmacintyre@millsmeyers.com

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1

**CERTIFICATE OF SERVICE**

2      I certify that I electronically filed the foregoing document with the Clerk of the Court

3  using the CM/ECF system which will send notification of such filing to:

4      Vito de la Cruz: vito@tamakilaw.com

5      Jean Homan: jhoman@ci.tacoma.wa.us

6      Richard H. Friedman: rfriedman@friedmanrubin.com

7      Sean J. Gamble: sgamble@friedmanrubin.com

8      Alexander Ackel:  aackel@friedmanrubin.com

9

10     Dated this 7th day of December 2017.

11

                                    *s/Karrie Fielder*
12                                   Karrie Fielder

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(No. 3:16-cv-05794-RBL) - 19

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343